**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MADISON D. PROCTOR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-1068 |
| | § | |
| SOUTHWESTERN BELL TELEPHONE | § | |
| CO. and AT&T SERVICES, INC., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

On April 1, 2010, Madison Proctor sued his former employer, Southwestern Bell Telephone

Company (Southwestern Bell), alleging violations of Title VII of the Civil Rights Act, 42 U.S.C.

§ 2000e *et seq.*  He alleged that he was subjected to a hostile work environment and retaliation from

a particular supervisor because of his race and because of a 2000 EEOC discrimination charge he

had filed.  In January 2008, Proctor filed an EEOC charge asserting that this supervisor had

subjected him to a hostile work environment, disparate treatment, and retaliation, from August 2007

to January 15, 2008, the date of the complaint.  While that complaint was pending, in August 2008,

Proctor was suspended and in October 2008, he was fired, on the ground that he violated the

company's code of business conduct.  On December 31, 2009 and on January 7, 2010, the EEOC

issued right to sue letters.  On April 1, 2010, Proctor filed this suit.  Southwestern Bell has moved

for summary judgment.  (Docket Entry No. 23).  Proctor, who is *pro se*, has not filed a response.

Based on the pleadings; the motion, reply, and response; the summary judgment record; and the law,

this court grants Southwestern Bell's motion.  The reasons are explained in detail below.

## I.    The Summary Judgment Evidence

Proctor, who is African-American, was hired by Southwestern Bell as a service representative in February 1995, for a wage of approximately $8.00 per hour.  He later became a cable splicer, making over $30.00 per hour.  (Docket Entry No. 1, p. 3).  In this suit, Proctor submitted a copy of his 2000 EEOC charge of race discrimination about a noose that was displayed at the workplace.  Proctor alleges in his suit that he was transferred to another office after his complaint under a supervisor, Robert Norwood, who questioned him about his EEOC complaint and told him that he was "in essence," a "troublemaker."  (*Id.*, p. 4).  Proctor requested and was granted a transfer.  In August 2007, Norwood was transferred into Proctor's section.  Proctor submitted a copy of a January 15, EEOC charge.  That charge stated as follows:

> I. In 2000, I filed a complaint with my employer and with the EEOC regarding a hangman's noose which was displayed in the workplace. As a result of my complaint, the company and I entered into an agreement which resolved the matter.  As part of the resolution, I was transferred to another office, under the supervision of Robert A. Norwood, Manager of Construction.  On my first day, Mr. Norwood questioned me about my complaint and asked what was my "problem".  He made it clear that he viewed the noose incident as a "joke" and that I had a problem.  I requested that I be removed from his section.  I was transferred to another supervisor.  In August, 2007, Mr. Norwood was transferred to my section and became my manager. In October, 2007, Mr. Norwood spoke with three of my co-workers about my prior complaint and mentioned that he had been watching me over the years.  Since that time, Mr. Norwood has engaged in a pattern of harassment and intimidation against me.  He has singled me out and treated me differently than my co-workers.  He constantly reminds me that I have "caused the company a lot of trouble" and that I have a "problem".  I believe his actions are an attempt to place me in a position to be terminated.
>
> II. In my opinion, my prior complaint was resolved and I was ready to move forward with my career.  Mr. Norwood has stated that my complaint was well known in the Alief district and that I needed to watch myself or I would be fired.  I believe this to be a direct act of intimidation in retaliation for exercising my right to complaint of

2

discrimination.

III.  I believe that I have been discriminated against because of my race, Black[,] and retaliated against, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id.*, Ex. 1).  On October 23, 2008, Proctor submitted another EEOC charge.  He stated:

I.  On January 16, 2008, I filed EEOC charge #460-2008-01492 against Respondent.  On August 15, 2008, I was placed under investigation by Respondent for allegedly violating their code of business conduct.  On October 15, 2008, Travis Thetford, District Manager, terminated my employment.

II.  According to Mr. Thetford, I was terminated for violating Respondent's code of business conduct.

III.  I believe that I have been discriminated against because of my race, Black, and retaliated against for filing an EEOC charge against Respondent, in violation of Title VII of the Civil Rights Act of 1964 as amended.

(*Id.*).  In June 2009, the EEOC issued a determination stating as follows:

According to Respondent, the Charging Party's complaint of discrimination was unfounded and he was disciplined due to poor job performance.  The investigation revealed that in 1999 the Charging Party filed an internal complaint of racial harassment.  Charging Party, who is Black, complained that a noose was exhibited in his work area and that he feared for his safety.  Charging Party also filed a charge of racial discrimination with the EEOC.  In resolution of the complaint, the Respondent agreed to move the Charging Party to another work area. Upon his reassignment, the Charging Party's new supervisor scolded the Charging Party regarding his complaint and stated that the Charging Party had taken it "too far".  Charging Party was able to successfully bid to transfer out of the unit and worked without incident until the Fall of 2007.  At that time, the former supervisor was reassigned to the Charging Party's work crew. Testimonial evidence confirms that the supervisor made negative comments to the Charging Party's coworkers regarding the earlier noose incident, characterized the Charging Party as a "troublemaker,["] and said he had been "watching" the Charging Party over the years.  The evidence also shows that the Charging Party was disciplined more than his co-workers and that the supervisor tended to be impatient and overbearing when dealing with

3

the Charging Party.

Regarding Respondent's internal investigation, the Commission finds
that Charging Party was entitled to pursue Respondent's internal
investigation, at the same time that he filed a charge and requested an
investigation by EEOC.

Based on the evidence, it is reasonable to believe that Charging Party
was retaliated against for participating in a protected activity, in
violation of Title VII of the Civil Rights Act of 1964, as amended.
The Commission makes no finding on the other issues alleged in the
charge.

(*Id.*).  On December 31, 2009 and January 7, 2010, the EEOC issued notices of right to sue.  The

first of these notices stated:

This notice concludes the EEOC's processing of the above-numbered
charge.  The EEOC found reasonable cause to believe that violations
of the statute(s) occurred with respect to some or all of the matters
alleged in the charge but could not obtain a settlement with the
Respondent that would provide relief for you.  In addition, the EEOC
has decided that it will not bring suit against the Respondent at this
time based on the charge and will close its file in this case.  This does
not mean that the EEOC is certifying that the Respondent is in
compliance with the law, or that the EEOC will not sue the
Respondent later or intervene later in your lawsuit if you decide to
sue on your own behalf.

(*Id.*).  The second notice stated:

The EEOC issues the following determination:  Based upon its
investigation, the EEOC is unable to conclude that the information
obtained establishes violations of the statutes.  This does not certify
that the respondent is in compliance with the statutes.  No finding is
made as to any other issues that might be construed as having been
raised by this charge.

(*Id.*).  On April 1, 2010, Proctor filed this suit, alleging discrimination and retaliation.  This motion

for summary judgment followed.

In its summary judgment motion, Southwestern Bell submitted evidence that on June 28,

2008, a construction manager reported finding a possible illegal substance at a work station where

4

Proctor worked.  That substance was marijuana.  (Docket Entry No. 1, Ex. 1).  Southwestern Bell conducted a search of company vehicles, including the one Proctor drove, and found nothing.  The following day, Southwestern Bell searched 33 personal vehicles parked on company property.  Proctor's was among them.  Before the search, in response to a question about whether there was anything in his vehicle, Proctor admitted that he had marijuana in the glove box.  (*Id.*, Ex. 2).  This violated the company's code of conduct, which prohibited the possession of illegal drugs or controlled substances while engaged in any company activity, on company premises, or in company vehicles.  (*Id.*, Ex. 1).  A director in the company's Construction& Engineering Department held a "Day-in-Court," a meeting between decision-maker and the employee in which the employee is given an opportunity to present his side of the case.  The director, Travis Thetford, reviewed the investigation and determined that Proctor should be fired for violating the code of business conduct.  (*Id.*).  Proctor has submitted no evidence to controvert that his vehicle had marijuana when it was on company property or that this violated the company's work rule.  Proctor has submitted no evidence of disparate discipline for similar infractions.

## II.    Analysis

### A.    The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Triple Tee Golf*, *Inc. v.  Nike*, *Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' — that is, pointing out to the district court — that there is an absence of

evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325.  While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case.  *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response."  *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"  *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

**B.     Discrimination**

Under Title VII, it is unlawful to "discharge any individual, or otherwise to discriminate against any individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's . . . race." 42 U.S.C. § 2000e-2(a)(1); *Smith v. Xerox Corp.*, 602 F.3d 320, 326 n.4 (5th Cir. 2010).  The law also prohibits retaliation for protected activities.  42 U.S.C. § 2000e-3(a); *Smith*, 602 F.3d at 326 n.5.

Disparate treatment, or intentional discrimination, can be proven by either direct or circumstantial evidence. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). Evidence is "direct" if it would prove the fact in question without inference or presumption. *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) (citations omitted). To serve as direct evidence of an employer's discriminatory intent, a workplace comment must be "direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that [race] was an impermissible factor in the decision to terminate the employee." *EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996) (citing *Bodenheimer v. PPG Indus. Inc.*, 5 F.3d 955, 958 (5th Cir. 1993)). Cases with no direct evidence proceed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), modified in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), and *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004). Under the modified *McDonnell Douglas* approach, the plaintiff has the initial burden of making a prima facie showing of racial discrimination. *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005); *Rachid*, 376 F.3d at 312. A plaintiff satisfies this burden by showing that: (1) he is a member of a protected group; (2) she was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated differently from those outside the protected class. *See Frank v. Xerox Corp.*, 347 F.3d 130, 137 (5th Cir. 2003); *see also Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005) ("To establish a prima facie case of discrimination under § 1981, Appellants must establish that the: (1) are members of a protected group; (2) were qualified for the position held; (3) were discharged from the position; and (4) were replaced by persons outside of the protected group."). If a plaintiff makes a prima facie showing, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for the adverse employment decision. *Cullwell v. City of Fort Worth*, 468 F.3d 868, 873 (5th Cir. 2006). If a defendant can produce such evidence,

the presumption of discrimination dissolves.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000); *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002).  The plaintiff must then identify or offer evidence to create a fact issue "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)."  *Rachid*, 376 F.3d at 312 (internal quotation and alteration marks omitted); see also *Cullwell*, 468 F.3d at 873; *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (analyzing a Title VII claim under the modified approach).  In a mixed-motive case, if the plaintiff shows that the illegal discrimination was a motivating factor, the defendant must respond with evidence that the same employment decision would have been made regardless of discriminatory animus.  *Rachid*, 376 F.3d at 312.  The plaintiff has the ultimate burden of showing a genuine issue of material fact on whether the defendant discriminated against him on the basis of the plaintiff's membership in the protected class.  *Reeves*, 530 U.S. at 143.

There is no evidence in the record suggesting that Southwestern Bell fired Proctor without a reasonable basis to believe that he possessed marijuana in his car when it was parked in the company lot.  Nor is there any allegation or evidence in the record suggesting that Southwestern Bell had faced a similar issue with an employee outside the protected group and acted differently.  *See Okoye v. Univ. of Tex. Hou. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001) (in disparate treatment cases involving employee misconduct and discipline, a "plaintiff must show that the employer gave preferential treatment to another employee under nearly identical circumstances; that is, that the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by other employees" (internal quotations and alterations omitted)); *see also Berquist v. Wash.*

8

*Mut. Bank*, No. 05-20956, 2007 WL 2007333, at *7 (5th Cir. Jul. 12, 2007) ("In disparate treatment cases, the plaintiff–employee must show 'nearly identical' circumstances for the employees to be considered similarly situated."   Proctor "cannot defeat summary judgment [on his disparate treatment claim] with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'"   *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation omitted); *see also Wixson v. Dowagiac Nursing Home*, 87 F.3d 164, 171 (6th Cir. 1996) (affirming the district court's grant of summary judgment where the plaintiffs' evidence contained numerous allegations of disparate treatment "that [were] made in general, conclusory terms, but names, times and occasions [were] missing"); *Smith v. Potter*, No. H-06-3278, 2008 WL 154462, at *5 (S.D. Tex. Jan. 15, 2008) (granting summary judgment on Title VII and ADEA claims because plaintiff's conclusory allegation that similarly situated employees existed was not supported by any evidence in the record); *Jackson v. Dall. Cnty. Juvenile Prob. Dep't*, No. 3:06-CV-264-M, 2007 WL 2187250, at *7 (N.D. Tex. July 30, 2007) (granting summary judgment on Title VII claim where plaintiff failed to present evidence of similarly situated employees outside the protected class who were treated more favorably and only offered conclusory allegations of disparate treatment).

Even assuming that Proctor made a prima facie showing of discrimination in his job termination, Southwestern Bell's nondiscriminatory explanation meets its burden.   The summary judgment record does not give rise to a fact issue as to whether this explanation was pretextual or whether discrimination was the reason for Proctor's termination.   A pretextual reason for termination means that "discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision," *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 2000) (quoting *Reeves,* 530 U.S. at 147).   A court must "consider 'the strength of the plaintiff's prima facie case, the probative value of the proof that the

employer's explanation is false, and any other evidence that supports the employer's case" to determine whether there is a fact issue as to pretext. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000) (quoting *Reeves,* 530 U.S. at 148–49)).  The record presents insufficient evidence from which a jury could conclude that the explanation was pretextual or that discrimination was a motive for firing Proctor.  The record shows no fact issue as to disparate discipline and no evidence that a non-African-American employee who had a similar violation of the work rule was treated differently.  The record does not raise a fact issue as to whether the job termination was pretextual or that discrimination was a motivating factor.  Summary judgment is granted as to this claim.

### B.      Retaliation

Title VII makes it unlawful for an employer to "discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a). Title VII retaliation claims based on circumstantial evidence are analyzed under the *McDonnell Douglas* burden-shifting framework.  *McCoy*, 492 F.3d 551, 556–57; *Septimus v. Univ. of Houston*, 399 F.3d 601, 607–10 (5th Cir. 2005).  For the purpose of a retaliation claim, an "adverse employment action" is defined as an action that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68 (2006) (internal quotations omitted).

In January 2008, Proctor filed an EEOC charge.  He was terminated in October 2008.  A close temporal proximity between protected activity and an adverse action may suffice for a prima

facie case.  But once the defendant proffers a nonretaliatory reason for the action, the plaintiff must come forward with more to avoid summary judgment.  *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 487 (5th Cir. 2008); *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007); *Roberson v. Alltel Info. Svcs.*, 373 F.3d 647, 655 (5th Cir. 2004); *Swanson v. GSA*, 110 F.3d 1180, 1188 (5th Cir. 1997).   In this case, Southwestern Bell has proffered a nondiscriminatory and nonretaliatory reason for its actions: Proctor's possession of marijuana in his vehicle.  The record discloses no evidence to support an inference that the proffered reason for the termination is untrue. Nor does the record support an inference that the decision maker, Travis Thetford, was motivated by a desire to retaliate.  Indeed, Proctor alleges only that one individual at Southwestern Bell, Norwood, his supervisor in 2000 and after August 2007, was motivated by retaliation against the complaints Proctor had filed.  In this case, the undisputed evidence is that the investigation into marijuana possession led to Proctor's termination.  There is no evidence that any action or statement by Norwood played any role in the decision to fire Proctor for violating the workplace rule forbidding drug possession on company property.  *See Staub v. Proctor Hospital*, —S.Ct.—, 2011 WL 691244 (U.S. Mar. 1, 2011) (an employer may be liable for employment discrimination based on the discriminatory animus of an employee who influenced, but did not make, the ultimate employment decision if the biased supervisor performed an act motivated by animus and intended to cause an adverse employment action, if that act is a proximate cause of the ultimate employment action).   In the present case, there is no evidence that any action by Norwood instigated or influenced the investigation or influenced the decision to terminate Proctor's employment.

### C.   Hostile Work Environment

Proctor also alleges that he suffered harassment. The elements of a hostile work environment claim are that: (1) the plaintiff belongs to a protected group; (2) he was subjected to unwelcome

11

harassment; (3) the harassment complained of was based on membership in the protected group; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known of the harassment, yet failed to take prompt remedial action. *Felton v. Polles,* 315 F.3d 470, 484 (5th Cir. 2002). The fifth element is not required when the alleged harasser is a supervisor with immediate or successively higher authority over the plaintiff. *See Celestine v. Petroleos de Venezuella,* 266 F.3d 343, 353–54 (5th Cir. 2001) (citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S. Ct. 2275, 141 L.Ed.2d 662 (1998)). For harassment to be actionable, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v. Henderson,* 286 F.3d 264, 268 (5th Cir. 2002) (internal quotation marks and citation omitted); *Watkins v. Tex. Dep't of Criminal Justice,* 269 F. App'x 457, 463–64 (5th Cir. 2008). "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Harvill v. Westward Commc'ns LLC,* 433 F.3d 428, 434 (5th Cir. 2005) (citing *Shepherd v. Comptroller of Pub. Accounts,* 168 F.3d 871, 874 (5th Cir. 1999)). The Supreme Court has made clear "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher,* 524 U.S. at 788 (citing *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 82 (1998)).

Proctor alleged harassment in his complaint and in his EEOC charge. Southwestern Bell did not move for summary judgment on this claim. Any such motion must be filed no later than **April 8, 2011**.

**IV.    Conclusion**

Southwestern Bell's motion for summary judgment is granted.

SIGNED on March 11, 2011, at Houston, Texas.

Lee H. Rosenthal
United States District Judge