**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| MADISON D. PROCTOR, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § CIVIL ACTION NO. H-10-1068 |
| | § |
| SOUTHWESTERN BELL TELEPHONE | § |
| CO. and AT&T SERVICES, INC., | § |
| | § |
| Defendants. | § |

**MEMORANDUM AND OPINION**

On April 1, 2010, Madison Proctor sued his former employer, Southwestern Bell Telephone Company (Southwestern Bell), alleging violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* He alleged that he was subjected to a hostile work environment and retaliation from a particular supervisor, Robert Norwood, because of race and because of a 2000 EEOC discrimination charge. In January 2008, Proctor filed an EEOC charge asserting that when Norwood became this supervisor again, he subjected Proctor to a hostile work environment, disparate treatment, and retaliation from August 2007 to January 15, 2008, the date of the complaint. While that EEOC complaint was pending, in August 2008, Proctor was suspended. In October 2008, he was fired on the ground that he violated the company's code of business conduct. On December 31, 2009 and on January 7, 2010, the EEOC issued right-to-sue letters. On April 1, 2010, Proctor filed this suit.

Southwestern Bell moved for summary judgment. (Docket Entry No. 23). Proctor, who is *pro se*, filed no response. This court granted Southwestern Bell's motion on March 11, 2011 in a Memorandum and Opinion. As explained in that Memorandum and Opinion, Proctor had filed

EEOC charges alleging racial discrimination and harassment in 2000, 2007, and 2008. The EEOC issued two notices of right-to-sue, one finding reasonable cause to believe that some violations of the statute occurred. In moving for summary judgment on the discrimination and retaliation claims, Southwestern Bell submitted evidence that Proctor had marijuana in the glove box of his car, which was parked on company property and that he was fired for this clear violation of Southwestern Bell's code of company conduct. This court granted summary judgment on the discrimination and retaliation claims because there was no evidence to controvert the violation of the work rule or to raise a fact issue as to disparate discipline. However, Southwestern Bell did not move for summary judgment on the harassment claim. This court set a deadline for such a motion, which Southwestern Bell met. (Docket Entry No. 25). No response has been filed.

**I.     Background**

Proctor, who is African-American, was hired by Southwestern Bell as a service representative in February 1995. In this suit, Proctor submitted a copy of his 2000 EEOC charge of race discrimination about a noose that was displayed at the workplace. Proctor alleges in his suit that he was transferred to another office after his complaint under a supervisor, Robert Norwood, who questioned him about his EEOC complaint and told him that he was "in essence," a "troublemaker." Proctor requested and was granted a transfer. In August 2007, Norwood was transferred into Proctor's section. Proctor submitted a copy of a January 15, 2008 EEOC charge. That charge stated as follows:

> I. In 2000, I filed a complaint with my employer and with the EEOC regarding a hangman's noose which was displayed in the workplace. As a result of my complaint, the company and I entered into an agreement which resolved the matter. As part of the resolution, I was transferred to another office, under the supervision of Robert A. Norwood, Manager of Construction. On my first day, Mr. Norwood questioned me about my complaint and asked what was my

> "problem". He made it clear that he viewed the noose incident as a "joke" and that I had a problem. I requested that I be removed from his section. I was transferred to another supervisor. In August, 2007, Mr. Norwood was transferred to my section and became my manager. In October, 2007, Mr. Norwood spoke with three of my co-workers about my prior complaint and mentioned that he had been watching me over the years. Since that time, Mr. Norwood has engaged in a pattern of harassment and intimidation against me. He has singled me out and treated me differently than my co-workers. He constantly reminds me that I have "caused the company a lot of trouble" and that I have a "problem". I believe his actions are an attempt to place me in a position to be terminated.
>
> II. In my opinion, my prior complaint was resolved and I was ready to move forward with my career. Mr. Norwood has stated that my complaint was well known in the Alief district and that I needed to watch myself or I would be fired. I believe this to be a direct act of intimidation in retaliation for exercising my right to complaint of discrimination.
>
> III. I believe that I have been discriminated against because of my race, Black[,] and retaliated against, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id.*, Ex. 1). On October 23, 2008, Proctor submitted another EEOC charge. He stated:

> I. On January 16, 2008, I filed EEOC charge #460-2008-01492 against Respondent. On August 15, 2008, I was placed under investigation by Respondent for allegedly violating their code of business conduct. On October 15, 2008, Travis Thetford, District Manager, terminated my employment.
>
> II. According to Mr. Thetford, I was terminated for violating Respondent's code of business conduct.
>
> III. I believe that I have been discriminated against because of my race, Black, and retaliated against for filing an EEOC charge against Respondent, in violation of Title VII of the Civil Rights Act of 1964 as amended.

3

(*Id.*).  In June 2009, the EEOC issued a determination stating as follows:

> According to Respondent, the Charging Party's complaint of discrimination was unfounded and he was disciplined due to poor job performance.  The investigation revealed that in 1999 the Charging Party filed an internal complaint of racial harassment.  Charging Party, who is Black, complained that a noose was exhibited in his work area and that he feared for his safety.  Charging Party also filed a charge of racial discrimination with the EEOC.  In resolution of the complaint, the Respondent agreed to move the Charging Party to another work area.  Upon his reassignment, the Charging Party's new supervisor scolded the Charging Party regarding his complaint and stated that the Charging Party had taken it "too far".  Charging Party was able to successfully bid to transfer out of the unit and worked without incident until the Fall of 2007.  At that time, the former supervisor was reassigned to the Charging Party's work crew.  Testimonial evidence confirms that the supervisor made negative comments to the Charging Party's coworkers regarding the earlier noose incident, characterized the Charging Party as a "troublemaker,["] and said he had been "watching" the Charging Party over the years.  The evidence also shows that the Charging Party was disciplined more than his co-workers and that the supervisor tended to be impatient and overbearing when dealing with the Charging Party.
>
> Regarding Respondent's internal investigation, the Commission finds that Charging Party was entitled to pursue Respondent's internal investigation, at the same time that he filed a charge and requested an investigation by EEOC.
>
> Based on the evidence, it is reasonable to believe that Charging Party was retaliated against for participating in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.  The Commission makes no finding on the other issues alleged in the charge.

(*Id.*).  On December 31, 2009 and January 7, 2010, the EEOC issued notices of right to sue.  The first of these notices stated:

> This notice concludes the EEOC's processing of the above-numbered charge.  The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you.  In addition, the EEOC

> has decided that it will not bring suit against the Respondent at this time based on the charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

(*Id.*). The second notice stated:

> The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

(*Id.*).

## II.     Analysis

The elements of a hostile work environment claim are that: (1) the plaintiff belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on membership in the protected group; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known of the harassment, yet failed to take prompt remedial action. *Felton v. Polles,* 315 F.3d 470, 484 (5th Cir. 2002). The fifth element is not required when the alleged harasser is a supervisor with immediate or successively higher authority over the plaintiff. *See Celestine v. Petroleos de Venezuella*, 266 F.3d 343, 353–54 (5th Cir. 2001) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S. Ct. 2275, 141 L.Ed.2d 662 (1998)). For harassment to be actionable, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v. Henderson,* 286 F.3d 264, 268 (5th Cir. 2002) (internal quotation marks and citation omitted); *Watkins v. Tex. Dep't of Criminal Justice*, 269 F. App'x 457, 463–64 (5th Cir. 2008). "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable

person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Harvill v. Westward Commc'ns LLC*, 433 F.3d 428, 434 (5th Cir. 2005) (citing *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999)). The Supreme Court has made clear "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788 (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)).

Proctor alleged harassment in his complaint and in his EEOC charge. In moving for summary judgment on this claim, Southwestern Bell submitted affidavits describing the basis for firing Proctor. A review of Proctor's submissions show that neither the decision to fire him nor the treatment he received before he was fired raise a fact issue as to actionable race-based harassment. Proctor's EEOC charges state that beginning in October 2007, when Norwood became his supervisor again, Norwood spoke with three of Proctor's coworkers about his prior complaint and mentioned that Norwood had been watching Proctor over the years. In describing the harassment, Proctor stated: "Since that time, Mr. Norwood has engaged in a pattern of harassment and intimidation against me. He has singled me out and treated me differently than my co-workers. He constantly reminds me that I have 'caused the company a lot of trouble' and that I have a 'problem'. I believe his actions are an attempt to place me in a position to be terminated." The case law is clear that such treatment does not rise to the level of a racially hostile work environment. In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir.2000)

(quoting *Harris*, 510 U.S. at 23).  Even considering the background that gave rise to Proctor's complaints, he does not describe conduct that raises a fact issue as to a hostile work environment. Title VII "was only meant to bar conduct that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace."  *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996); *see also Shepard v. Comptroller Public of Accounts*, 168 F.3d 871, 874 (5th Cir. 1999).  It is a "demanding" standard that requires proof of severe or pervasive conduct that can be characterized as "extreme."  *Faragher*, 524 U.S. at 788.

The case law on when workplace comments give rise to a hostile work environment claim shows a far greater degree of harassment than the record discloses here.  *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (a supervisor's comments directed to the plaintiff about "ghetto children" and other racially insensitive remarks did not rise to the level of severe or pervasive harassment); *Septimus v. Univ. of Houston*, 399 F.3d 601, 612 (5th Cir. 2005) (a two-hour "harangue" by a supervisor and his use of a mocking tone on one occasion, and another supervisor's comment comparing the plaintiff to a "needy old girlfriend," were not severe or pervasive and did not amount to a hostile working environment).  The record does not raise a fact issue as to whether the conduct or comments Proctor complains of was "sufficiently severe or pervasive as to alter the conditions of [his] employment and create an abusive working environment."  *See*, *e.g.*, *Ellis v. Principi*, 246 Fed. App'x 867, 871 (5th Cir. 2007) (finding that a plaintiff did not suffer a hostile work environment based on evidence that the supervisor gave her less favorable work assignments than her coworkers, denied her a performance award, and required her to use leave time to compensate for arriving late to work, and that coworkers made comments about the her religion); *Harrington v. Disney Reg'l Entm't, Inc.*, No. 06-12226, 2007 WL 3036873, at *12 (11th Cir. Oct. 19, 2007) (unpublished) (finding no hostile environment when an employer

allegedly subjected the employee to unfair discipline); *Schultze v. White*, 127 Fed. Appx. 212, 217-18 (7th Cir. 2005) (unpublished) (plaintiff in sex harassment case did not show she was subject to hostile work environment despite evidence of heightened monitoring and close scrutiny of her job performance, sexually derogatory comments, and unequal discipline based on sex).

  Southwestern Bell's motion for summary judgment is granted. Final judgment is entered by separate order.

  SIGNED on May 9, 2011, at Houston, Texas.

             Lee H. Rosenthal
             United States District Judge